495 So.2d 133 (1986)
In the Interest OF R.W., C.A.W., M.I.W., C.P., M.E.P. and A.P.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Mary POLLOCK, N/K/a Mary Hayes, Appellee.
No. 68245.
Supreme Court of Florida.
August 21, 1986.
Rehearing Denied October 22, 1986.
OVERTON, Justice.
This appeal from In the Interest of R.W., 481 So.2d 548 (Fla. 5th DCA 1986), concerns the constitutionality of section 39.41(1)(f)1.d, Florida Statutes (1983), which permits the permanent severance of a parent's rights to his or her children based solely on the parent's failure to substantially comply with a performance agreement prepared by Department of Health and Rehabilitative Services personnel. The Fifth District Court of Appeal found the statute unconstitutional.[*] We affirm.
Appellee, the mother of six children, appeared in circuit court in June, 1983, and entered into an oral stipulation consenting to an adjudication of dependency. As a result of that action, the children were placed in the temporary custody of the Department of Health and Rehabilitative Services. Subsequently, a performance agreement, prepared by the Department of Health and Rehabilitative Services, was executed by all parties. Eight months after the entry of the performance agreement, the Department filed a petition for termination of parental rights and permanent commitment for adoption, alleging that the mother failed to comply substantially with the performance agreement. The Department also alleged that the mother had abandoned her children. After a hearing, the circuit court entered a final order terminating the mother's parental rights and committing the children to the care, custody, *134 and control of the Department of Health and Rehabilitative Services. The termination was based solely on the mother's failure to substantially comply with the terms of the performance agreement.
The Fifth District Court of Appeal determined that section 39.41(1)(f)1.d, Florida Statutes (1983), "is fundamentally defective and unjust insofar as it permits the severance of a parent's rights solely because of that parent's failure to substantially comply with a performance agreement drafted by an H.R.S. worker, and could be reviewed on that basis alone." 481 So.2d at 549. The district court further stated: "The statute sets forth no standards or guidelines for performance agreements; it leaves the substance of such agreements entirely to the whims and caprices of the individual social worker who drafts them." Id. The district court concluded:
It is one thing to base severance on abuse, neglect or abandonment; it is quite another to base it solely on breach of a performance agreement, which is the factual situation in the instant case. Only by clear and convincing evidence of neglect, abuse or abandonment by the natural parent can the parental relationship be validly severed by the state.
Id. (footnote omitted; citations omitted).
The statute in issue, section 39.41(1)(f)1.d, Florida Statutes (1983), provides:
(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
... .
(f)1. Permanently commit the child to the department or a licensed child-placing agency willing to receive the child for subsequent adoption if the court finds that it is manifestly in the best interests of the child to do so, and:
... .
d. If the parent or parents have failed, upon expiration of a performance agreement entered into under s. 409.168, to comply substantially with such agreement. If the court finds that the failure to comply with the performance agreement is the result of conditions beyond the control of the parent or parents, such failure shall not be used as grounds for permanent commitment.
At the outset, it is important to recognize that we are not dealing with temporary child custody. We are dealing with the state's authority to permanently terminate the parent-child relationship by placing the child or children for permanent adoption. The Department contends that this statute permits the state to permanently terminate the parent-child relationship based solely on the violation of a performance agreement. Additionally, the Department argues that this is especially true after a child has been declared dependent. We disagree. The prior dependency finding was not an issue in this termination proceeding, and there was no finding of abandonment even though that contention was alleged in the original petition.
The state must recognize that the temporary termination of parental rights, which may occur upon a determination of dependency, and the permanent termination of the parent-child relationship are two distinct proceedings. The United States Supreme Court has clearly established the parent-child relationship as a constitutionally protected liberty interest. Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3055, 61 L.Ed.2d 797 (1979); Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In its decision in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court stated:
The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even *135 when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the state moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.
Id. at 753-54, 102 S.Ct. at 1394-95.
District courts of this state have expressly required a showing of abandonment, abuse, or neglect, by clear and convincing evidence, before parental rights can be permanently terminated. In Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983); Carlson v. Department of Health and Rehabilitative Services, 378 So.2d 868 (Fla. 2d DCA 1979). This Court has recognized that the protection of the parent-child relationship is so significant that a permanent termination proceeding is presently the only civil proceeding where indigent parents are entitled to counsel. In Interest of D.B., 385 So.2d 83 (Fla. 1980).
We agree with the district court that the present statute sets no real standards or guidelines for these performance agreements and they are left, to a large extent, to the discretion of the social worker who drafts them. We realize that social workers need broad discretionary authority. We also recognize that performance agreements are an important means of addressing family problems, and the violation of their terms can be a proper basis for temporarily terminating parental custody. Failure to comply with a performance agreement's provisions, however, cannot be the sole basis for permanently terminating a parent's fundamental right to the custody of his or her child or children. We conclude and hold that, before parental rights can be permanently terminated, the state must show abandonment, abuse, or neglect by clear and convincing evidence.
Accordingly, we affirm the opinion of the district court of appeal.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[*] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.