THOMPSON, Judge,
dissenting.
I respectfully dissent. I would reverse the order terminating Porter’s parental rights.
This ease is not new to this court. We affirmed without opinion the order terminating the mother’s parental rights in Porter v. Department of Children and Family Services, 705 So.2d 912 (Fla. 5th DCA 1998). The record in the mother’s case is also the record before this court in Porter’s case. In fact, the order of adjudication and the order of disposition are the same in both cases. The difference in the instant case is that the evidence regarding Porter is not clear and convincing.
The court terminated Porter’s parental rights based on the adjudication of dependency, Porter’s abandonment of the children, his failure to substantially comply with his permanent placement plan (“PPP”), and his failure to substantially change his lifestyle. This court affirms the judgment based upon In Interest of R.V.F., Jr., 437 So.2d 713 (Fla. 2d DCA 1983). In R.V.F., Jr. the second *383 district held that the father abandoned his children because he failed to contact the Department of Health and Rehabilitative Services for more than 17 months before the filing of the petition for permanent commitment, and because he failed to provide support even though he had the financial ability to do so. Id. at 714. The second district reversed the trial court and directed that R.V.F., Jr. be permanently committed to HRS for subsequent adoption. Id. at 714. R.V.F., Jr. can be distinguished.
Regarding abandonment in this case, the court stated only “[t]hat the Court finds that the father’s extended absence from the children’s lives constituted abandonment of the children.” The children have been in the custody of the Department as dependents since January 1993. The earliest involvement of the Department with the family was in 1990 when the parents consented to a finding of dependency and an order of disposition as to one of their children. The other children came into the custody of the Department piecemeal until 1994, when the court placed all the children in foster care. Porter was incarcerated for half the time that the children were being supervised by the Department.
Section 39.01(1), Florida Statutes (1997), defines abandonment as a situation in which a parent, being able, fails to provide support for a child, and evinces a willful rejection of parental obligation. Here, Porter’s separation from his children was involuntary for several years. Incarceration alone cannot be the basis of abandonment. In Interest of B.W., 498 So.2d 946 (Fla.1986); In Interest of E.L.H., Jr., 687 So.2d 924 (Fla. 2d DCA 1997); P.S. v. State, 384 So.2d 656, 657 (Fla. 5th DCA 1980). Further, during the time he allegedly abandoned his children, Porter was homeless and unemployed. He had no ability to provide a home for the children or money for their support. Two case workers testified that the Department waived the payment of child support because Porter had no money. This evidence refutes the trial court’s finding that Porter financially abandoned his children.
Moreover, the Department prevented Porter from visiting his children after he was accused of sexually abusing his children. Although the allegation was never proven, the Department suspended Porter’s visitation with two of the children. He was allowed to continue visiting the other children until his visitation was terminated by the trial court. Before the sexual abuse allegations were made, caseworkers from the Department testified, Porter visited often with his children.
The trial court also wrote that Porter did not comply with his PPP. Porter signed the agreement in 1990, and it required him to complete the program conducted by Emerge Now for perpetrators of domestic violence, to obtain and maintain a suitable residence for the family, to obtain and maintain employment, and to submit to a psychological evaluation and complete all treatment or counseling recommended. Porter was also required to pay child support based upon his income. Porter completed the Emerge Now program and remained employed except for a brief time. He also established residence in his aunt’s home, which was described as a “well kept residence in a middle-class neighborhood.” The only portion of the PPP that Porter did not comply with was the requirement that he obtain a psychological examination. Porter said he did not know it was required, and counselors for the Department testified they did not arrange for the examination because Porter had no money. The Department failed to provide clear and convincing evidence of Porter’s substantial noncompliance with his PPP. Rather, the evidence showed he completed most of the tasks. Therefore, the trial court’s contrary determination is incorrect. See In Interest of S.D., 670 So.2d 1099 (Fla. 2d DCA 1996)(holding that an order terminating parental rights must be vacated where the record does not show that the father materially breached provisions of his PPP). Accord C.L. v. Department of Children and Family Services, 716 So.2d 825 (Fla. 4th DCA 1998).
I also note that the written order of adjudication and order of disposition terminating Porter’s parental rights are defective. They do not comply with the requirements of section 39.467(5), Florida Statutes (1995), which requires a court to enter a written order containing findings of fact and conclusions of *384 law supporting termination of parental rights. Failure of the trial court to comply with the statute requires reversal. See Moore v. Department of Health and Rehabilitative Services, 664 So.2d 1137 (Fla. 5th DCA 1995); Ash v. Department of Health and Rehabilitative Services, 649 So.2d 305 (Fla. 5th DCA 1995); In re L.H., 647 So.2d 311 (Fla. 5th DCA 1994); In Interest of B.T., 597 So.2d 398 (Fla. 1st DCA 1992). I am aware of the length of time the children have been in the custody of the Department and that Florida law stresses that no child shall remain in foster care for longer than a year, see section 39.435(2), Florida Statutes (1996). However, a parent has the right to the companionship, care, custody, and management of his children, and courts must be vigilant that allegations are proven and orders terminating parental rights are accurate to ensure that justice is done. Lassiter v. Dept. of Social Services of Durham County, N.C., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).