HORTON, Judge.
The natural father of a minor child approximately five years of age seeks review of an adverse final decree authorizing the adoption of the child by, and awarding permanent custody to, its step-father. We reverse.
The appellant and the child’s natural mother lived together as husband and wife in the state of New York until March, 1960, at which time they separated. Shortly thereafter, the mother moved to Florida where, on March 27, 1961, she obtained an uncontested divorce from the appellant. By the terms of the final decree she was awarded the permanent control and sole custody of the minor child. Six days after the rendition of the final decree of divorce, the natural mother married the appellee. On June 29, 1961, the appellee filed a petition for adoption of the minor child, alleging that the child had lived with him and the natural mother since their marriage; that the natural mother had consented in writing to the adoption; and that the adoption would serve the best interests and welfare of the child.
The appellant answered the petition denying the salient allegations thereof, and affirmatively alleging that he had in the past, and was still, contributing substantially to the child’s support; that he had not abandoned the child; that the natural mother had frustrated his attempts to visit the child; and that she had initiated these proceedings through her present husband, the appellee. The answer further alleged that the appellant was of good moral character and that the best interests and welfare of the child would not be served by an adoption.
A hearing on the issues raised by the petition and answer culminated in the final decree appealed. Upon petition, the chancellor granted a rehearing to allow the appellant to testify in opposition to the petition for adoption. The chancellor then entered an order adhering to the original decree and stating his reasons therefor.
The appellant contends, inter alia, that the chancellor erred (1) in giving prima facie evidentiary effect to the final decree of divorce awarding custody to the mother as support for the decree of adoption; (2) in that there was insufficient evidentiary basis for the chancellor’s conclusion that the appellant was guilty of abandonment; and (3) in granting the petition for adoption and awarding permanent custody of the minor child to the appellee. We find these contentions have merit.
The guidelines for decision in a case such as the one at bar were delineated in two recent Florida cases. In Wiggins v. Rolls, Fla.1958, 100 So.2d 414, the Supreme Court of Florida said:
“We deem it appropriate to emphasize that we are here dealing with the matter of adoption as distinguished from the matter of custody. The adoption decree finally and for all time determines the rights of the objecting parent. It completely severs the relationship of parent and child. The matter of what might appear to be for the best interests of a minor in determining temporary or prolonged custody will not always support a decree of adoption. * * *
“We are not here losing sight of the rule that the courts will always consider first and primarily the welfare of the minor. At the same time we are of the view that due regard should be given to the rights of a natural parent. He should not be deprived of the privileges and responsibilities of parenthood against his consent unless in some fashion he has abandoned his offspring *772 or has otherwise demonstrated that he is not a fit subject to continue to enjoy the privilege. * * * ”
In Roy v. Holmes, Fla.App.1959, 111 So.2d 468, the court stated:
“ * * * Parents are by no means required to face strangers to their blood on equal terms in contention for the- -parental rights to their children. The law is solicitous of the welfare of the child, and indeed where they are irreconcilable the welfare of the child will in proper cases be given primacy over the natural rights of the parents. Nevertheless * * * except in cases of clear, convincing and compelling reasons to the contrary the child's- welfare is presumed to- be best served by care and custody in the natural family relation by its natural parents, and that transitory failures and derelictions of the parents might justify temporary deprivation of custody by appropriate proceedings but seldom the permanent deprivation of parental rights with the finality of an adoption decree” [Emphasis supplied]
Reverting to the case at bar, it is obvious from the record and the order entered on rehearing, that the chancellor placed great weight upon the final decree of divorce which awarded the natural mother the permanent control and sole custody and care of the minor child, and upon the character of the grounds for divorce alleged in the mother’s bill of complaint. It further appears that the chancellor was persuaded from the evidence that the appellant had been derelict in supporting the child and that his alleged affection for the child was of late origin.
 There is no need to detail the testimony given before the chancellor. Suffice it to say that in sum it centered around how much the appellant was in arrears in the payment of child support under a New York court order; how often he had tried to see the child; how many telephone calls he had made to the Miami home of the natural mother; and what she had done to thwart his attempts at visitation when he was in the area. There was a total lack of evidence bearing on the critical questions -of whether the appellant’s actions when in the presence of the child were detrimental to its interests and welfare and whether he had been guilty of conduct constituting abandonment. On the contrary, the record indicates that the appellant’s every attempt to see and talk with his child was thwarted by the mother who engaged in a systematic course of action calculated to deprive the appellant of his rights of visitation culminating in the appellee’s petition for adoption.[1] The appellant finally had to obtain a court order permitting him to see his child. Admittedly the appellant was in arrears in the payment of child support under the terms of the New York decree but that in itself would not warrant termination of the right of visitation,[2] much less the permanent termination of the parent-child relationship.[3] We conclude that the evidence here does not meet the requirements set forth in Roy v. Holmes, supra, and Wiggins v. Rolls, supra.[4]
Accordingly, the decree appealed should be, and is hereby, reversed with directions to dismiss the petition for adoption.
Reversed with directions.
CARROLL, J., dissents.

. The appellant is a resident of the state of New York and for this reason was unable to visit his' child with any degree of frequency. However, on those occasions when he was in Florida he made every attempt to visit the child. These attempts were violently opposed by the mother who, on one occasion, went so far as to condition this visit upon his promise to represent himself as the child’s uncle.

. See Howard v. Howard, Fla.App.1902, 143 So.2d 502.

. See Roy v. Holmes, supra; Torres v. Van Eepoel, Fla.1957, 98 So.2d 735.

. Compare In re Adoption of Corcuera, Fla.App.1962, 145 So.2d 493.